UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES E. LUNDEEN, SR., | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:14-cv-00547-SEB-MJD |
| NICHOLAS RHOAD Director of The Indiana Professional Licensing Agency, STEPHEN HUDDLESTON President, Medical Licensing Board of Indiana, AMBER SWARTZELL Deputy Attorney General, Office of the Attorney General of Indiana, FRANCES L. KELLY c/o National Chimney Sweep Guild, | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION FOR DEFAULT AND MOTIONS TO STRIKE**

This matter comes before the Court on Plaintiff's "Motion for Entry of Default," [Dkt. 28], Plaintiff's "Motion to Strike Docket #30 for Filing Out of Rule Without Leave," [Dkt. 32], and Plaintiff's "Verified Motion to Strike Docket #34 and Docket #35 Pursuant to the Inherent Power of This Court." [Dkt. 36.] For the reasons stated below, the Court **DENIES** Plaintiff's motions.

## I. Background

On April 10, 2014, James Lundeen, Sr., ("Plaintiff") sued Nicholas Rhoad, Stephen Huddleston, Amber Swartzell, and Frances Kelly ("Defendants"), alleging that the Indiana Professional Licensing Agency ("IPLA") violated state and federal statutes by suspending his Indiana medical license based solely on an Ohio disciplinary action "without authenticated or certified evidence" of the Ohio disciplinary action. [*See* Dkt. 1; *see also* Dkt. 20 at 4.]

1

Summonses were issued to all four Defendants on April 10, 2014. [Dkt. 2.] The summons to Kelly was sent care of the National Chimney Sweep Guild and was served on the guild's legally designated representative, Sara Sichting. [Dkt. 3 at 14.]

On May 1, 2014, Indiana Deputy Attorneys General Corinne Gilchrist ("Gilchrist") and Dino Pollock ("Pollock") entered appearances on behalf of Defendants Rhoad and Huddleston. [Dkts. 6 & 7.] On May 29, Gilchrist and Pollock entered appearances on behalf of Defendant Swartzell. [Dkts. 10 & 11.] That same day, Defendants Rhoad, Huddleston, and Swartzell filed their answer to Plaintiff's complaint. [Dkt. 12.]

On June 6, Pollock and Gilchrist entered appearances on behalf of Defendant Kelly. [Dkts. 14 & 15.] On June 23, 2014, a second summons was issued to Defendant Kelly. [Dkt. 17]. This time, the summons was personally served on Kelly on June 23, 2014. [Dkt. 18.]

On July 18, 2014, Gilchrist moved to withdraw her appearance. [Dkt. 21.] The Court granted that motion on July 21, 2014, [Dkt. 22],[1] and on July 31, 2014, Indiana Deputy Attorney General Rebecca Brelage entered an appearance on behalf of all four Defendants [Dkt. 23.]

On July 16, 2014, Plaintiff filed a "Motion for Relief from Judgment Pursuant to Rule60(b)(4)." The motion asks the Court to vacate the IPLA's suspension of his license. [Dkt. 19.] All four Defendants filed a response in opposition on October 3, 2014. [Dkt. 34.]

On September 12, 2014, Plaintiff filed the current Motion for Entry of Default against Defendant Kelly. [Dkt. 28.] In support, Plaintiff stated that Kelly had been personally served on

---

[1] Gilchrist's motion and the Court's order applied only to Defendants Swartzell, Huddleston, and Rhoad. [*See* Dkts. 21 & 22.] Nevertheless, the Court's docket reflects that Gilchrist's appearance has been withdrawn for all Defendants.

June 24, 2014,[2] such that her time to plead or otherwise defend against Plaintiff's claim had expired by the time of Plaintiff's motion for default. [Dkt. 29 at 1.]

Four days later, on September 16, Defendant Kelly filed her answer to Plaintiff's complaint. [Dkt. 30.] Plaintiff responded with his "Motion to Strike Docket #30 for Filing Out of Rule Without Leave." [Dkt. 32.] He contends that Kelly's answer was due "on or about July 15, 2014," and that Kelly never asked for an extension of time to respond to Plaintiff's complaint, making her answer untimely. [Dkt. 33.] Defendants responded to this motion to strike and the motion for default on October 3, 2014. [Dkt. 35.]

On October 8, Plaintiff filed his "Verified Motion to Strike Docket #34 and Docket #35 Pursuant to the Inherent Power of This Court." [Dkt. 36.] He asks the Court to strike Defendants' response to his motion for relief from judgment, [Dkt. 34], and Defendant's response to his motion for default judgment [Dkt. 35]. [*See* Dkt. 36.]

## II. Discussion

Plaintiff's second motion to strike, [Dkt. 36], argues that the Court should strike Defendants' responses to Plaintiff's earlier motion to strike and his earlier motion for default. [*See id*.] The Court will accordingly address Plaintiff's second motion to strike before addressing the remaining motions.

### A. Docket No. 36: Plaintiff's "Verified Motion to Strike Docket #34 and Docket #35 Pursuant to the Inherent Power of This Court."

Plaintiff contends that the Court should strike Docket No. 34 and Docket No. 35 because Defendants' counsel "willfully and knowingly" made various false statements. [Dkt. 36 at 8.]

---

[2] Defendant Kelly was actually served on June 23, 2014, but the Docket entry reporting such service was not filed until June 24, 2014. [Dkt. 18.] This one-day discrepancy does not affect the resolution of Plaintiff's motions, but it explains Plaintiff's later contention that Kelly's answer or responsive pleading was due on July 15 rather than July 14.

These allegations arise from Plaintiff's attempts to communicate with defense counsel Dino Pollock.

Plaintiff explains that on June 6, 2014, attorneys Pollock and Gilchrist entered appearances for Defendant Kelly, as indicated by Docket entries 14 and 15. [Dkt. 36 at 3.] Each entry included a certification that a copy of the notice had been sent to Plaintiff's Bloomington, Illinois address. [Dkts. 14 & 15.] Plaintiff, however, states that "he never received service of either Doc. 14 or Doc. 15." [Dkt. 36 at 3.]

Plaintiff then states that he submitted two address changes to the Court. On June 7, 2014, he submitted a notification changing his address from Bloomington, Illinois to Cleveland, Ohio. [*Id.*; *see also* Dkt. 16.] Then, on September 10, 2014, he changed his address from a Cleveland street address to a Cleveland Post Office Box. [*Id.* at 4; *see also* Dkt. 27.] He also emailed Defendants' counsel a notice of each change of address. [*See* Dkts. 36-1 & 36-3.]

On October 3, 2014, Defendant Kelly filed two documents: a response to Plaintiff's motion for default, [Dkt. 35], and a response to Plaintiff's motion for relief from judgment. [Dkt. 34.] In both documents, Defendant's counsel Pollock certified that a copy of the response was "properly addressed" and mailed to Plaintiff's Cleveland street address. [Dkt 34 at 12; Dkt. 35 at 5.]

Based on these events, Plaintiff identifies three alleged "willful misrepresentations" by Pollock. First, he states that Pollock's certification of service in his notice of appearance, [Dkt. 14], was false because Plaintiff never actually received the document. [Dkt. 36 at 7.] Second, he states that Pollock's certification in Docket No. 34 was false because by the time of Docket No. 34's filing, Plaintiff's change of address to the Cleveland P.O. Box had become effective, such that the document was not "properly addressed" when it was mailed to Plaintiff's Cleveland

4

street address. [*Id.*] Third, Plaintiff contends for the same reason that the certification in Docket No. 35 was false. [*Id.*]

Plaintiff then argues that Pollock made two additional false statements. He first notes that in Defendant's initial motion for extension of time to respond to Plaintiff's complaint, Pollock wrote that on "April 21, 2014, a paralegal at this office spoke to Plaintiff James Lundeen," and "Lundeen stated he would not object to a twenty-one (21) day extension, but would object to a twenty-eight (28) day extension." [Dkt. 8 ¶ 7.] Plaintiff contends this statement is false because he actually stated he would not object to a 14-day extension, and then only later agreed to a 21-day extension. [Dkt. 36 at 8.]

Second, Plaintiff maintains that Pollock made a false statement during the initial pre-trial conference on September 16, 2014. [*Id.*] Plaintiff alleges that Pollock said that Defendants' initial answer "neglected to include Kelly" with the "other" State Defendants, but argues that this statement "is belied by the timing of the filing of the Answer (Doc. No. 12, Answer, 05/29/2014) and the notices of appearance of counsel for Defendant Kelly (Doc. Nos. 14 & 15, 06/06/2014)." [*Id.*] Based on these alleged falsehoods,[3] Plaintiff contends that the Court should exercise its "inherent power" to strike Docket Nos. 34 and 35. [Dkt. 36 at 6-7.]

---

[3] In his "Reply Memorandum in Support of Plaintiff's Motions for Entry of Default and Motion to Strike," [Dkt. 38], Plaintiff adds one more allegedly false statement. He claims that in their "Response in Opposition to Motion for Relief from Judgment Pursuant to Rule 60(b)(4)," Defendants misquoted Supreme Court authority by omitting the conjunction from the following quotation: "Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error **or** on a violation of due process." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (emphasis added).

Defendants did in fact omit the "or," [*see* Dkt. 34 at 9], but the Court finds it more likely that this was an innocent error rather than an intentionally false representation. First, omitting the "or" renders the sentence grammatically awkward, making it unlikely that any attempted fraud would go unnoticed—indeed, this is presumably why Plaintiff noticed the omission and brought it to the Court's attention. Second, Defendants did not omit the "either" preceding the "or," [*see id.*], indicating that they did not intend to obscure the existence of two independent situations in which Rule 60(b)(4) applies. Third, Defendants addressed both "jurisdictional error" *and* "violation of due process" in their brief, [*see id.* at 10], showing that they recognized the existence of both bases for applying Rule 60(b)(4). Finally, Defendants (and Plaintiff) also cited the incorrect volume of *United States Reports* [*see* Dkt 34 at 9; Dkt. 37 at 5]: *Espinosa* appears in volume 559, not volume 550. This suggests Defendants' error

5

**1. Legal Standard**

A Court may use its "inherent powers to 'fashion . . . appropriate sanction[s] for conduct which abuses the judicial process.'" *DeBoer v. Vill. of Oak Park*, 90 F. Supp. 2d 922, 924 (N.D. Ill. 1999) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). These inherent powers "must be invoked with the utmost caution." *Id.* (quoting *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1059 (7th Cir. 1998)). To impose such sanctions, the Court must find that the party to be sanctioned "engaged in bad-faith conduct or willful disobedience of a court's orders." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013), *cert. denied sub nom. Spehar Capital, LLC v. Mayer Brown Rowe & Maw*, LLP, 134 S. Ct. 1026 (2014) (quoting *Chambers*, 501 U.S. at 47). The Seventh Circuit has "no single litmus test for determining what constitutes bad faith," but "more than mere negligence is required." *Id.* "The party seeking sanctions has the burden of proving that the sanctionable conduct occurred." *Ramsey v. Broy*, No. 08-CV-0290-MJR-DGW, 2010 WL 1251199, at *5 (S.D. Ill. Mar. 24, 2010) (citing *Chambers*, 501 U.S. at 50-51).

**2. Certifications of Service**

Plaintiff first claims that Pollock's certifications of service in Docket Nos. 14, 34, and 35 were false. [Dkt. 36 at 7.] He suggests that Pollock is engaged in a "willful and deliberate diversion strategy to prevent [Plaintiff] from being aware of the filings and from being able to file reply memorandum in opposition in a timely manner." [*Id.* at 6.]

Plaintiff has no support for these allegations. His argument regarding Docket No. 14 appears to be that if he never received Docket No. 14, then Pollock must have intentionally lied in his certificate of service, [*see* Dkt. 36 at 3], but Plaintiff does not account for other

---

was the result of careless typing, not intentional deceit. The Court expects all parties to be more attentive to the accuracy of future citations.

explanations: perhaps Pollock incorrectly addressed the document when attempting to serve it; perhaps the post office lost the document; perhaps Plaintiff himself misplaced the document; and on and on. Such explanations would imply that Pollock, at worst, acted negligently, such that Plaintiff has not met his burden of showing that something "more than mere negligence," *Grochocinski*, 719 F.3d at 799, occurred in this case.

Plaintiff's argument with regard to Docket No. 34 and Docket No. 35 also lacks sufficient support. Plaintiff did in fact enter a change of address in September 2014 indicating that he could be contacted at a Post Office Box rather than at his prior street address in Cleveland. [Dkt. 27 at 1.] It was therefore improper for Pollock, in October 2014, to address Docket No. 34 and Docket No. 35 to Plaintiff's street address. [*See* Dkt 34 at 12; Dkt. 35 at 5.]

Again, however, Plaintiff does not explain how this conduct rises above the level of negligence. He speculates that Pollock is conspiring to keep him uninformed, but he provides *only* speculation. [*See* Dkt. 36 at 3.] Moreover, Pollock's more recent filings use Plaintiff's proper P.O. Box address, [*see, e.g.*, Dkt. 39 at 4], suggesting that Pollock has no intent to keep Plaintiff uninformed about these proceedings. Without more evidence of bad faith, Plaintiff has therefore not met his burden to show that sanctionable conduct occurred.

### 3. Statement on Objection to Extension

As noted above, Defendant's initial motion for an extension of time included a statement that Plaintiff had said "he would not object to a twenty-one (21) day extension." [Dkt. 8 ¶ 7.] Plaintiff claims that Pollock "knowingly and willfully misinformed the Court on this matter" because Plaintiff actually had no objection to a 14-day extension. [Dkt. 36 at 8.]

This contention is baseless. Plaintiff himself acknowledges that "[b]oth parties in fact agreed on a twenty-one (21) day extension." [*Id.*] Thus, in writing that Plaintiff "would not object to a twenty-one (21) day extension," [Dkt. 8 ¶ 7], Pollock was merely reporting Plaintiff's

7

own agreement. It is hardly a misrepresentation to write that a party who "agrees" to a 21-day extension of time would "not object" to a 21-day extension of time. Again, then, the Court finds that Plaintiff's allegations do not establish the "bad-faith conduct or willful disobedience of a court's orders," *Grochocinski*, 719 F.3d at 799, required to support an imposition of sanctions.

### 4. Statement at Initial Pre-Trial Conference

Plaintiff contends that Pollock's statement that he "neglected to include" Kelly along with the "other" Defendants' initial answer "is belied by the timing of the filing of the Answer (Doc. No. 12, Answer, 05/29/2014) and the notices of appearance of counsel for Defendant Kelly (Doc. Nos. 14 & 15, 06/06/2014)." [Dkt. 36 at 8.]

Plaintiff does not explain this argument. [*See id.*] Presumably, Plaintiff means that because Pollock did not enter an appearance for Kelly until after filing the answer, Pollock made a purposeful—rather than a negligent—decision not to include Kelly in the answer Pollock filed. By using the phrase "neglected to include," however, Pollock might just as easily have been explaining that, as a general matter, he did not include Kelly in the answer, without any intent to imply what his mental state may have been at the time he filed the answer. Plaintiff's allegations thus fall short of establishing bad faith or willful disobedience on Pollock's part and cannot support an imposition of sanctions through use of the Court's inherent power.

Because Plaintiff has failed to carry his burden to show that sanctionable conduct occurred, the Court **DENIES** Plaintiff's "Verified Motion to Strike Docket #34 and Docket #35 Pursuant to the Inherent Power of This Court." [Dkt. 36.] The Court will accordingly consider these docket entries in ruling on Plaintiff's remaining motions.

### B. Docket No. 28: Plaintiff's "Motion for Entry of Default"

Rule 55 provides that when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In most cases, a party "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Rule 12(a), in turn, provides that unless "another time is specified by this rule or a federal statute," a defendant must serve an answer "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1).

Defendant Kelly in this case was personally served on June 23, 2014. [Dkt. 18; *see also* Dkt. 35 ¶ 4.] Her answer or responsive pleading was therefore due "on or about July 14, 2014." [*Id.*] Kelly, however, did not answer or otherwise respond until September 16, [Dkt. 30], and did not request an extension of time in which to respond.[4] Further, Plaintiff has applied to the Court for a default judgment, [Dkt. 28], and has submitted an affidavit in support of his motion. [Dkt. 29.] The only issue is therefore whether default judgment is the appropriate remedy for Defendant's dilatory conduct.

"This Circuit has a well established policy favoring a trial on the merits over a default judgment. For that reason, a default judgment should be used only in extreme situations, or when other less drastic sanctions have proven unavailing." *Sun v. Bd. of Trustees of Univ. of IL*, 473 F.3d 799, 811 (7th Cir. 2007) (citation omitted). The default judgment is "a weapon of last resort, appropriate only when a party wilfully disregards pending litigation." *Id.* (citations omitted).

As Defendant explains, there "has been no such willful disregard of the pending litigation in this case." [Dkt. 35 ¶ 8.] Kelly's counsel appeared at the Court's initial pre-trial conference, [*id.* ¶ 7], and explained that Kelly's failure to file a timely answer was an "oversight" that resulted from the lack of "a formal request for representation" from Kelly to the Indiana

---

[4] The Court on May 2, 2014 granted an extension of time to respond, but that extension applied only to Defendants Rhoad and Huddleston. [*See* Dkt. 9.]

9

Attorney General. [*Id.* ¶¶ 6-7.] Kelly's counsel maintained that the oversight would "be quickly rectified," [*id.* ¶ 7], and indeed, Kelly filed her answer on the same day as the pre-trial conference. [*See* Dkt. 30.]

Furthermore, the Court finds it likely that Kelly's failure was, as her counsel maintains, "unintentional[]" rather than "willful." [Dkt. 35 ¶ 7.] Counsel from the Indiana Attorney General's Office timely filed an answer for Defendants Rhoad, Huddleston, and Swartzell. [*See* Dkt. 12.] This demonstrates counsels' attention to this matter and willingness to respond to Plaintiff's allegations, implying that Kelly's omission from the answer was likely inadvertent rather than intentional. As such, this case does not present the sort of "extreme" situation or willful disregard for litigation that would make default appropriate. *See Sun*, 473 F.3d at 811.

In his reply brief, Plaintiff contends that Defendants' counsel evidenced unwillingness to respond to his claims because they were allegedly unaware of Plaintiff's "Motion for Relief from Judgment Pursuant to Rule 60(b)(4)" at the time of the September 16, 2014 initial pre-trial conference. [Dkt. 38 ¶ 8.] Since that time, however, Defendants have filed a response in opposition to Plaintiff's motion, [Dkt. 34], and a motion to dismiss Plaintiff's suit. [Dkt. 39.] Defendants have thus addressed Plaintiff's claims, belying any contention that they remain unwilling to address this litigation.

Plaintiff's reply also reiterates his contention that Defendants' attorneys have made false statements throughout the course of this litigation. [Dkt. 38 ¶ 8.] As previously described, however, those arguments lack merit. The Court therefore concludes that this case does not involve "extreme" conduct or "willful disregard" for litigation, such that default is not appropriate. The Court accordingly **DENIES** Plaintiff's "Motion for Entry of Default." [Dkt. 28.]

C. **Docket No. 32: Plaintiff's "Motion to Strike Docket #30 for Filing Out of Rule Without Leave"**

Plaintiff's last remaining motion addressed herein, [Dkt. 32], asks the Court to strike Kelly's answer, [Dkt. 30], because the filing of the answer on September 16, 2014 was well after the deadline to respond to Plaintiff's complaint. [Dkt. 33 at 3.] In response, Defendant cites Fed. R. Civ. P. 12(f), and contends that there is nothing "redundant, immaterial, impertinent, or scandalous contained in Defendant's Answer," such that Rule 12 does not support striking it. [Dkt. 35 ¶ 9.] Plaintiff replies that he is not invoking Rule 12; instead, he asks the Court to use its "inherent power to strike documents and to control its docket." [Dkt. 38 ¶ 9.]

As noted above, the Court may use its inherent powers only "with the utmost caution." *Corley*, 142 F.3d at 1059, and only when the party to be sanctioned "engaged in bad-faith conduct or willful disobedience of a court's orders." *Grochocinski*, 719 F.3d at 799. Courts should be especially reluctant to rely on inherent powers "where the matter under consideration 'is governed by other procedural rules, lest . . . the restrictions in those rules become meaningless.'" *Corley*, 142 F.3d at 1059 (quoting *Kovilic Const. Co. v. Missbrenner*, 106 F.3d 768, 772–73 (7th Cir.1997)). Thus, a court using its inherent powers should explain why use of the governing procedural rules would be inadequate to serve its purpose. *See id.*

Plaintiff in this case asks the Court to use its inherent powers to strike Defendant Kelly's answer. Rule 12(f), however, expressly governs when a court may strike material from a pleading, and provides that it may do so when the pleading contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Plaintiff in this case has not explained why reliance on Rule 12(f) would be inadequate. [*See* Dkt 38 ¶ 9.] He cites case law suggesting that courts may use their inherent powers to "control their docket" and protect the "decorum" of the court, [*id.*], but Rule 12(f)'s allowance for striking "redundant,

11

immaterial, impertinent, or scandalous matter" already achieves this goal. Resort to inherent powers is therefore unnecessary, and in applying Rule 12, the Court has found no redundant, impertinent or otherwise objectionable material in the Kelly's answer; indeed, her answer is almost identical to the State Defendants' previous answer, [*compare* Dkt. 30, *with* Dkt. 12], which Plaintiff has not moved to strike.

Finally, even if the Court determined that its inherent powers were available for use in this situation, Plaintiff has not demonstrated that the filing of Kelly's answer constituted the sort of "bad-faith conduct or willful disobedience of a court's orders," *Grochocinski*, 719 F.3d at 799, necessary to invoke those powers. As noted earlier, the delay in answering the complaint was apparently inadvertent, and Kelly fulfilled her promise to remedy her conduct by filing an answer on the same day as the initial pre-trial conference. The Court therefore **DENIES** Plaintiff's "Motion to Strike Docket #30 for Filing Out of Rule Without Leave." [Dkt. 32.]

### III.  Conclusion

For the reasons set forth above, the Court **DENIES** Plaintiff's "Motion for Entry of Default," [Dkt. 28], Plaintiff's "Motion to Strike Docket #30 for Filing Out of Rule Without Leave," [Dkt. 32], and Plaintiff's "Verified Motion to Strike Docket #34 and Docket #35 Pursuant to the Inherent Power of This Court." [Dkt. 36.]

Dated: 12/09/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

JAMES E. LUNDEEN, SR.
P.O. Box 18452
Cleveland Heights, OH 44118-0452

Dino L. Pollock
INDIANA ATTORNEY GENERAL
dino.pollock@atg.in.gov

Rebecca A. Brelage
INDIANA ATTORNEY GENERAL
rebecca.brelage@atg.in.gov